## Sumner *versus* Stewart.

1. S. gave orders to R. in the employ of W., a broker in Pittsburg, to buy five hundred barrels of oil, on terms, &c., specified; the order was telegraphed to W.'s house in Philadelphia, who telegraphed in reply "we have bought subject to immediate confirmation, five hundred barrels," &c., on the terms of the order. R., not knowing the name of the seller, immediately replied: "We hereby confirm purchase," &c., signing S.'s name, having had no further communication with S. Next day R. received the name, and

19 P. F. Smith—21

[Sumner *v.* Stewart.]

told S., who, not being satisfied with the seller's standing, refused him, and W.'s guaranty, and refused to sign a contract or accept the oil. The custom of oil dealers is that the contract with the name of the seller must be submitted to the principal for confirmation. When names are given and rejected, the sale fails. *Held,* that there was no evidence of a contract on which the seller could recover from S.

2. The broker could not bind his principal except in the manner recognised by the custom, and R.'s confirmation was without authority.

October 5th and 6th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 62, to October and November Term 1870.

This was an action of assumpsit to March Term 1869, by John L. Stewart against Eli C. Clark and A. A. Sumner, trading as Clark & Sumner; Sumner only was summoned.

The plaintiff declared that on the 6th of August 1868, the defendants had bought from him 500 barrels of oil at $34\frac{7}{8}$ cents per gallon to be delivered in bonded warehouses in Philadelphia during the last half of August 1868, at buyer's option, giving ten days' notice to sellers previously to delivery, and the defendants promised to accept the oil, but although the plaintiff, at the time in the contract mentioned, was ready to deliver the oil in Philadelphia, of which the defendants had notice, and the same was tendered, the defendants would not receive and pay for it, and the plaintiff was compelled to sell it at a loss of $1000.

Under their pleas the defendants gave notice of special matter, viz.: That he had made no such contract. On the 6th of August 1868, Waring & King, general oil brokers, reported to A. A. Sumner the purchase of 500 barrels of oil from persons unknown to him; on the 8th of August, Waring & King reported to Sumner that John L. Stewart was the vendor, and presented a form of contract for Sumner's acceptance; that not being acquainted with Stewart, and finding from information Stewart's standing not satisfactory to him, Sumner refused to accept the contract for himself or for Clark & Sumner; that the contract alleged was never offered to Sumner or Clark & Sumner, nor ever entered into by them nor by any person authorized by them.

The case was tried, March 1st 1870, before Collier, J., when the following facts appeared by the evidence:—

W. P. Richardson was a broker in the oil business in the employ of Waring & King, of Pittsburg, who had a house under the name of Waring, King & Co., in Philadelphia; on the 6th of August 1868, they were authorized by Clark & Sumner to buy 500 barrels of oil at $34\frac{7}{8}$ per gallon, buyer's option last half of August; if the oil was wanted before the last day of August, the buyer was to give ten days' notice; the place of delivery was Philadelphia. Richardson, on the 6th, transmitted the terms of the contract to Philadelphia by this telegram:—

[Sumner *v.* Stewart.]

"Pittsburg, August 6th 1868.

"To Waring, King & Co.:

"You may buy 500 barrels oil last half August, at 34⅞ cents.
                                          "CLARK & SUMNER."

On the same day he received this telegram from Waring, King
& Co. :—

"Is Clark & Sumner's offer for August still good?"

Another message was received by Richardson from Waring,
King & Co., as follows:—

"Philadelphia, August 6th 1868.

"We have bought, subject to immediate confirmation, 500,
buyer last of August, 34⅞ for account of Clark & Sumner."

The reply sent to this was:—

"Pittsburg, August 6th 1868.

"We hereby confirm purchase 500 buyer's last half of August,
34⅞ for Clark & Sumner.            "W. T. RICHARDSON."

During the mutual transmissions of the telegrams, Richardson
did not see Sumner. On the 7th or 8th he saw Sumner and told
him that he had bought 500 barrels of oil at his price, but did not
give him the name of the seller, not knowing it himself; on the
next day he told Sumner that Stewart was the seller. Sumner
neither accepted nor refused, but asked who Stewart was; after
looking at Bradstreet's or Dun's Registry, Sumner said he was
not satisfied with Stewart's rating. On the 10th Sumner refused
Stewart because he did not consider him financially strong.
Waring & King offered to guaranty Stewart, but the offer was not
accepted by Clark & Sumner.

Collymore, an oil broker in Philadelphia, knowing that Stewart
wished to sell oil, went to Waring, King & Co., who offered 34⅞
per gallon, which Stewart accepted. On the same day, August 6th,
having learned by telegram from Pittsburg that Clark & Sumner
were the purchasers, he prepared a contract, viz.: "Bought of
John L. Stewart for account of Clark & Sumner, through Waring,
King & Co., 500 barrels" of oil, &c. This contract was signed by
Collymore, and "Accepted, John L. Stewart." The contract
embodied that which Waring, King & Co. were authorized by
Clark & Sumner to make: it was sent to Clark & Sumner, they
denied buying oil of Stewart.

It was in evidence by Waring, one of the partners of Waring,
King & Co., and a witness for plaintiff, that "when a broker makes
a contract for the purchase or sale of oil it is customary to submit
it to the principal and have it confirmed by him. Until so con-
firmed it is not binding on either party. If the principal fails to
confirm it the contract fails. Names are often given which are
rejected, and in such case the purchase or sale fails.'

[Sumner *v.* Stewart.]

There was evidence by the defendant that it was the almost universal rule not to accept a person who is guarantied, just because he is guarantied.

A number of witnesses testified substantially as above as to the custom of confirming a contract.

The defendants' 3d point, which was refused, was: "Under the evidence in this case, the plaintiff has·failed to make out any contract or agreement on which he is entitled to recover."

The verdict was for the plaintiff for $1045.45.

The defendants took out a writ of error and, amongst others, assigned for error the answer to this point.

*R. Woods*, for plaintiffs in error.

*J. Hampton*, for defendant in error.—Richardson had authority to purchase the oil. The contract was complete when he sent the telegram accepting it: 1 Pars. on Contracts 407; 1 Story on Contracts, §§ 316, 384; Hamilton *v.* Lycoming Ins. Co., 5 Barr 339; Story on Agency, § 493. A principal who neglects promptly to disavow an act of his agent who has transcended his authority makes the act his own: Bredin *v.* Dubarry, 14 S. & R. 30; Porter *v.* Patterson, 3 Harris 235. When by the offer it is incumbent on a party to express his dissent, or his acts afford an unequivocal presumption, his acceptance will be implied: Train *v.* Gold, 5 Pick. 380. What is a reasonable time to accept or refuse a contract will, in every case, depend upon its circumstances: Story on Sales, § 126; Maclise *v.* Frith, 6 Wend. 103. The offer of agent to guaranty binds the principal to ratify: 2 Kent's Com. 855.

The opinion of the court was delivered, May 23d 1872, by

READ, J.—This action was brought by John B. Stewart against Eli C. Clark and A. A. Sumner, partners as Clark & Sumner, to recover damages for a breach of a contract for the purchase and sale of 500 barrels of oil at $34\frac{7}{8}$ cents per gallon, in August 1868. The defendant, Eli C. Clark, was never summoned, and the suit proceeded against Summer alone. The real question in the case was, whether there was such a contract as was alleged by the plaintiff.

The custom as to the employment and extent of authority of oil brokers was very clearly proved on the trial. "That the broker must submit the contract to his principal for his acceptance. The custom is, that the broker must report the name of the seller to the principal for his acceptance. There is no contract until both parties accept. This has been the universal rule. In some cases the ability is the main ground upon which the acceptance or non-acceptance is based. The almost universal rule is not to accept a

party who is guarantied just because he is guarantied. I don't know of any sales of oil, unless put in writing: that is the universal custom. The contracts are executed on two papers, each accepted by the other."

The evidence showed that on Thursday, the 6th August 1868, A. A. Sumner, of the firm of Clark & Sumner, refiners and oil dealers, of the city of Pittsburg, gave Waring & King, oil brokers, of said city, an order to buy for Clark & Sumner 500 barrels of oil, buyer's option last half of August, price 34⅞ cents per gallon, oil to be standard white refined oil, to be delivered in Philadelphia. The order was given to W. P. Richardson, of Pittsburg, an oil broker, who was a clerk with Waring & King, in their employ, and broker for them. On the 6th August Mr. Richardson telegraphed to Waring, King & Co., of Philadelphia, "You may buy 500 barrels, buyer's option last half of August, at 34⅞ cents, for Clark & Sumner." To this was replied, "Is Clark & Sumner's offer for August still good?" The next despatch was :—

"Philadelphia, August 6th 1868.
"We have bought, subject to immediate confirmation, 500 barrels, buyer last of August, 34⅞, of account of Clark & Sumner."

The reply by Mr. Richardson was, "We hereby confirm purchase 500, buyer's last half of August, 34⅞, for Clark & Sumner."

This correspondence was conducted by Richardson and Mr. R. Collymore, oil broker, on behalf of Waring, King & Co., of Philadelphia. The confirmation was without any authority from Clark & Sumner or Sumner, and the name of the seller was not known to Richardson. On Friday, the 7th August, Mr. Richardson received a letter from Philadelphia, giving Mr. Stewart's name as the purchaser, whom Mr. Sumner did not know, and referring to the Registry—Bradstreet's or Dun's—" he was not satisfied with his rating."

Mr. Richardson wrote to Philadelphia, and told them what had taken place, and having received Waring, King & Co.'s offer to guaranty, called on Sumner on Monday, 10th August, and he refused Mr. Stewart on the ground that he was not financially strong, and also refused the guaranty. The paper signed by Stewart remained in Philadelphia, and whatever paper or contract was presented to Sumner was one for him to sign if he accepted it. This he never signed, but distinctly refused to accept.

The broker was simply a negotiator, with no authority to bind his principal, except in the manner recognised by the custom of the business. When, therefore, Mr. Richardson confirmed the sale he did it without any authority. When on the 7th, or later, he communicated the name of the seller to Mr. Sumner, he certainly did not accept, but really declined it, and so Mr. Richard-

[Sumner *v.* Stewart.]

son thought, for a guaranty was sent him, which he offered to Mr. Sumner on Monday, who refused both.

It is clear, therefore, that there was no contract whatever for a breach of which Sumner could be sued. The court, therefore, should have answered the 3d point submitted to the court by the defendant in the affirmative.

" That under the evidence in this case the plaintiff has failed to make out any contract or agreement on which he is entitled to recover."

Judgment reversed, and *venire facias de novo* awarded.